IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          CV 12-1303 WPL/KBM

ASSORTED DRUG PARAPHERNALIA,

    Defendant,

and

ROSWELL SELF STORAGE, MATTHEW
DAVID LITTLE & FATT KIDDS ZONE,

    Claimants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF FORFEITURE**

This matter is before me on the United States's Motion for Summary Judgment. (Doc. 36.) The United States argues that it is entitled to summary judgment in its favor and an order of forfeiture that forfeits to the United States all right, title, and interest to the Assorted Drug Paraphernalia ("Defendant Property"). The United States contends that it is entitled to judgment as a matter of law as to the Defendant Property pursuant to 21 U.S.C. § 881(a)(10) because the Defendant Property constitutes drug paraphernalia as defined by 21 U.S.C. § 863(d). The United States attached to its motion sworn declarations from four law enforcement agents. (Doc. 36 Exs. 1-4.) Claimant Matthew David Little filed a response and attached his own sworn affidavit, a copy of his business license registration, and a copy of his responses to the United States's first set of interrogatories and requests for production (Doc. 39; Doc. 39 Exs. 1-3). The United States

filed a reply. (Doc. 40.) Based on a review of the briefing, the record, and the relevant law, I grant in part and deny in part the United States's motion.

## STANDARD OF REVIEW

In a federal civil forfeiture action, the burden of proof is on the United States "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1) (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

## FACTUAL & PROCEDURAL BACKGROUND

The factual and procedural background found in the record and all reasonable inferences from them are presented in the light most favorable to Little. *See id.* Little was the owner and sole proprietor of Fatt Kidds Zone, a business located at 325 S. Main Street in Roswell, New

Mexico. Little leased Roswell Self Storage Unit #1031 at 505 E. 19th Street in Roswell, New Mexico, for inventory storage. On or about July 25, 2012, law enforcement officers, including Sergeant Michael Taylor, seized approximately: 4,370 "glass smoking instruments"; 1,700 "assorted smoking instruments"; 170 scales (weighing devices); and 31 grinders from the store location. The same day, law enforcement officers seized approximately: 1,838 "glass smoking instruments"; 107 "assorted smoking instruments;" and 1 scale from the storage unit. These items constitute the Defendant Property.

Little does not dispute that the government seized items from his store and storage unit; however, Little contests the United States's labeling and defining of the items seized into particular categories, asserting that the United States did not adequately photograph and inventory the items. Further, Little states that the "glass smoking instruments" and "scales" could be used for lawful purposes, such as for décor, smoking tobacco, or other lawful purposes.

On the day of the seizures, Little did not have any pipe tobacco on display or for sale. Little does not directly dispute this fact, although he states that he did have pipe tobacco on display or for sale at various times. Special Agent Joe Gelinas secured the seized items.

On or about July 26, 2012, Special Agent Gelinas transported the seized items to the evidence vault at the Las Cruces Resident Office of the Drug Enforcement Administration ("DEA"), where the items remain.

According to declarations, Special Agents Gelinas and William Kirkpatrick inventoried the seized items on October 16, October 20, and October 24, 2014. Little is unable to confirm whether such an inventory took place, and he points out that the United States seized his paperwork as well, so he is unable to determine whether the United States correctly inventoried

and labeled the items seized. However, Little does not dispute that Government Exhibits 1-70 are true and accurate photographs of items seized from the store and storage unit.

The United States contends that the "glass smoking instruments" and "assorted smoking instruments" are designed and primarily used for consuming controlled substances, that the scales are designed and/or primarily intended for use in preparing controlled substances for consumption and distribution, and that the grinders are designed and primarily used for grinding the seeds out of marijuana prior to smoking it. Little, on the other hand, states that the items were not sold for illegal use. Little displayed signs throughout his store that stated that the items were not for illegal use. Also, Little states that all of the items seized can be used for legal purposes, such as for artistic décor, for weighing various items, or for grinding legal substances into powder.

In response to a request by the United States for the production of documents, Little provided an "Artwork Proof" and "Proof of Advertisement" for the store, both of which include a picture of a bong. (Gov't Exs. 77-78.) Little does not dispute that these documents include pictures of a bong, but he contends that a bong can be used for legal purposes. Little also provided a newspaper article that advertised the store as having a "420 Blowout Sale." (Gov't Ex. 79.) Little recognizes that, although "420" may be a code associated with marijuana, this does not mean that the items in his store were for illegal purposes or to be used for illegal purposes.

Little acknowledges that he sold the following items for "incense purposes": Brain Freeze, Dr. Feelgood, Maui Tai (Blueberry Kushi), and Maui Tai (Island). Little and his employees represented to customers that the products were not for human consumption, and if anyone asked about any of the store's merchandise with respect to an illegal use, the customers

were asked to leave. Signs were posted throughout the store indicating that products were for legal purposes only. While the store was out of tobacco at the time of the seizures, Little had been selling bags of tobacco. Little wrote in his affidavit that the pipes on display were for tobacco use or for décor and that he had seen the pipes he sold on display in people's homes. (Doc. 39 Ex. 3.)

Some of Little's suppliers included: Rasta Spice; Captain Amsterdam; Detoxify LLC; Zencense Incenseworks, LLC; Bio Hazard Incorporated; HBI International; and Guardian Wholesale. An invoice from Rasta Spice states, "Free Samples of our new spice flavors are included!!!!!" (Gov't Ex. 83.) An invoice from Detoxify, LLC, states, "Detoxify is introducing it's [sic] latest detox innovation—INSTANT CLEAN—all the power of Mega Clean in 3 convenient capsules." (Gov't Ex. 85.) An invoice from Bio Hazard Incorporated stated that Little ordered twelve "Gas Mask[s] with Acrylic Attachment." (Gov't Ex. 87.) An invoice from HBI International, states: "NOT FOR USE WITH TOBACCO." (Gov't Ex. 88.) An invoice from Guardian Wholesale lists a product purchased by Little as a "MARIJUANA DIPSTRIP." (Gov't Ex. 89.) A letter from Zencense Incenseworks, LLC, states:

> Dear Customer,
>
> Here are the samples of Sonic Zero that I spoke with you about. This product is completely legal in your state and will not be affected by the DEA action on 12/24/10. Also enclosed is an independent lab report showing that it does not contain any chemicals that are legislated in your state or the federal government.

(Gov't Ex. 90.) Included with the letter was a report reflecting a test of the Sonic Zero product for cannabinoids and synthetic cannabinoids. (*Id.*)

Little's business license indicated that the type of business was "Tobacco Pipe + Accessories, Novelty Items, Clothing, Retail Goods." (Doc. 39 Ex. 2.) Little responded to an

5

interrogatory that his products were for tobacco use and other legal purposes only. (Doc. 39 Ex. 1 at 6.)

## DISCUSSION

According to 21 U.S.C. § 881(a)(10), "[a]ny drug paraphernalia" . . . "shall be subject to forfeiture to the United States and no property right shall exist in [it]." "Drug paraphernalia" is defined as

> any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance . . . , [such as] marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines.

21 U.S.C. § 863(d). Fifteen categories of items are listed as per se examples of drug paraphernalia. These categories include the following:

> (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured mental bowls; (2) water pipes; (3) carburetion tubes and devices; (4) smoking and carburetion masks; (5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand; (6) miniature spoons with level capacities of one-tenth cubic centimeter or less; (7) chamber pipes; (8) carburetor pipes; (9) electric pipes; (10) air-driven pipes; (11) chillums; (12) bongs; (13) ice pipes or chillers; (14) wired cigarette papers; or (15) cocaine freebase kits.

*Id.*; *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519 (1994) (stating that the list of fifteen items constitutes "per se drug paraphernalia" (emphasis omitted)).

Other factors that may be considered in determining whether an item constitutes drug paraphernalia include the following:

> (1) instructions, oral or written, provided with the item concerning its use; (2) descriptive materials accompanying the item which explain or depict its use; (3) national and local advertising concerning its use; (4) the manner in which the item is displayed for sale; (5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products; (6) direct or circumstantial evidence of

>the ratio of sales of the item(s) to the total sales of the business enterprise; (7) the existence and scope of legitimate uses of the item in the community; and (8) expert testimony concerning its use.

21 U.S.C § 863(e). An item is not drug paraphernalia if it is "traditionally intended for use with tobacco products." *Id.* § 863(f)(2).

In *Posters 'N' Things*, the Court held that drug paraphernalia is identified by objective, not subjective, standards.[1] 511 U.S. at 517-18. Further, the exemption for items "traditionally intended for use with tobacco products" is also determined by an objective standard. *Id.* at 520-21. The Court noted that there are two categories of drug paraphernalia identified by § 863(d): "items 'primarily intended . . . for use' with controlled substances and items 'designed for use' with such substances." *Id.* at 518.

An item that is designed for use with illegal drugs is one that is "principally used with illegal drugs by virtue of its objective features, *i.e.*, features designed by the manufacturer. . . . [T]his term refers to the design of the manufacturer, not the intent of the retailer or customer." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 (1982). Items such as "bongs, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase)." *Posters 'N' Things*, 511 U.S. at 518.

"'[P]rimarily intended . . . for use' refers to a product's likely use rather than to the defendant's state of mind." *Id.* at 519. That is, objective standards are used to determine whether, based on an item's primary intended use, the item is drug paraphernalia. *Id.* at 522. However, an item can qualify as drug paraphernalia for reasons other than its objective features, as outlined in 21 U.S.C. § 863(e). *Id.* For example, "while scales or razor blades as a general class may not be designed specifically for use with drugs, a subset of those items in a particular store may be

---

[1] *Posters 'N' Things* interprets "21 U.S.C. § 857," the content of which is now found in 21 U.S.C. § 863. I reference § 863 throughout the remainder of this Order.

'primarily intended' for used with drugs by virtue of the circumstances of their display and sale." *Id.* at 522 n.11.

The United States argues that the pipes and smoking instruments in the Defendant Property are clearly drug paraphernalia. The United States contends that bong and parts of bongs are pictured in Exhibits 1, 2, 3, 4, 6, 7, 10, 14, 15, 17, 18, 20, 22, 24, 28, 31, 33, 36, 40, 41, 43, 45, 46, 47, 48, 49, 50, 51, 52, 63, 66, 67, 68, 70, 73, and 74, and constitute per se drug paraphernalia pursuant to 21 U.S.C. § 863(d)(12). In addition, the United States argues that the majority of the pipes seized are too small for smoking tobacco and that the tobacco exemption in 21 U.S.C. § 863(f) does not apply. The United States contends that the traditional use standard for the tobacco exemption is an objective standard that is stricter than a could-possibly-be-used-with-tobacco-products standard. The United States argues that the pipes and smoking implements seized were designed specifically for use with controlled substances and have no other use besides contrived ones. As such, the United States argues that these items are drug paraphernalia regardless of Little's subjective intent.

With regard to the seized grinders, the United States argues that they were specifically designed for grinding the seeds out of marijuana to prepare the marijuana for smoking. The United States also argues that the seized scales are drug paraphernalia because they were designed for and/or primarily intended for use to weigh controlled substances. The United States contends that the way the scales were displayed at the store and their proximity to other drug paraphernalia further supports its argument that the scales were primarily intended for use with controlled substances. The United States points out that Little's subjective intent is not relevant in determining whether an item is designed for use or primarily intended for use with drug paraphernalia.

The United States argues that a store that purported to sell tobacco products would not advertise itself using a picture of a bong. Nor would it associate itself with the marijuana subculture by holding a "420 Blowout Sale." In addition, a tobacco shop would not have a use for marijuana dipstrips or purchase items described by the manufacturer as "NOT FOR USE WITH TOBACCO." Finally, the United States argues that the innocent owner defense does not apply to drug paraphernalia.

Little argues that there are disputed material facts and that the United States is not entitled to judgment as a matter of law with respect to the Defendant Property. First, Little points out that the United States failed to separate out each item individually and show that it is drug paraphernalia under 21 U.S.C. § 863(d). Second, Little argues that the United States uses affidavits in a "general, self serving and conclusionary nature" to support its motion, without noting whether certain items can be used for a legal purpose such as with tobacco, as art, for incense, for medical or health purposes, or for use with food or jewelry. Little argues that just because an item might be used for an unlawful purpose does not mean that it cannot be used for a lawful purpose. As to the scales and grinders, Little asserts that scales can be used for weighing items other than controlled substances and that grinders can be used for grinding any number of legal substances. Further, Little kept signs posted in the store that nothing for sale was for use with controlled substances: if anyone asked about using merchandise for an illegal use, he or she was asked to leave. Finally, Little argues that the United States has failed to show that any item sold was ever used for an illegal purpose or that Little had items for sale for illegal purposes.

The United States replies that Little failed to controvert the photographic evidence and declarations that establish that the Defendant Property was designed for and primarily intended for use with controlled substances. The United States asserts that there is no merit to Little's

argument that the United States failed to separate each individual item seized, as law enforcement officers performed a multi-day inventory of the Defendant Property, described the property in their declarations, and supplemented the declarations with seventy-six photographic exhibits, with similar items grouped together for the photographs. The United States also points out that regardless of whether an item might be used for a legal purpose, it is the designed use or primary intended use that matters in determining whether the item is drug paraphernalia. Further, the United States argues that even if Little sometimes sold pipe tobacco or other tobacco items in his store, this would not impact the characterization of the Defendant Property as drug paraphernalia.

DEA Special Agents Kirkpatrick and Scott M. Hartz each prepared sworn declarations regarding the Defendant Property. Each examined every photograph of the Defendant Property and, based on their training and experience, stated what most of the items were designed and/or primarily used for. (*See* Doc. 36 Exs. 3-4.) The declarations reflect that the following United States exhibits contain items designed for and/or primarily used for smoking marijuana: 2-29, 31-33, 35-37, 40-54, 61-63, and 66-76. Items in these exhibits include glass pipes; plastic smoking pipes; bongs; "can-verter" smoking devices; gas masks; and smoking kits that contain a lighter, glass pipe, metal pipe, metal "one hitter" pipe, pick, roach clip, and filters. The declarations reflect that the following exhibits contain items designed for and/or primarily used for parts of a bong: 1, 10, 22, 41, and 63. Items in these exhibits include glass downpipes/stems, bowls, mouthpieces, and hoses. The declarations affirm that exhibit 1 contains items designed for and/or primarily used to smoke crack cocaine. This exhibit consists of flared glass tubes and straight glass pipes. The declarations state that the following exhibits contain items designed for and/or primarily used to smoke methamphetamine: 30, 34, 38-39, 55-58, and 65. These exhibits

contain glass pipes. The declarations assert that exhibit 59 contains grinders designed for and/or primarily used to grind marijuana. Finally, the declarations state that exhibits 60 and 64 contain scales commonly used to weigh controlled substances.

Sergeant Taylor also prepared a sworn declaration, in which he stated that exhibits 71 through 76 are photographs that are true and accurate depictions of some of the items on display for sale at the store. (Doc. 36 Ex. 1 at 2.) Among the items he observed, Sergeant Taylor wrote that

> [b]ased on the various designs and size of the scales as well as that of the grinders and the way that these products were displayed at Fatt Kidds Zone alongside other drug paraphernalia, it appeared to me that the scales and grinders were consistent with those commonly identified for use with controlled substances.

(*Id.*)

I have examined the photographs submitted by the United States and the declarations by the officers. Based on this examination, I conclude that the Defendant Property is sufficiently itemized and categorized for review by this Court. Upon reviewing the items that the United States argues are for smoking marijuana, smoking crack cocaine, smoking methamphetamine, or to be used as a part for a bong, I find that these items are per se drug paraphernalia under 21 U.S.C. § 863(d). Various pipes of different materials, including glass, plastic, and metal, are contained in the list of items primarily intended or designed for use in introducing controlled substances into the human body. *See* 21 U.S.C. § 863(d)(1), (2), (7), (8), (9), (10), (13). Bongs, roach clips, and smoking masks are also per se drug paraphernalia. *Id.* § 863(d)(4), (5), (12). Little's intentions or those of his customers are of no relevance where an item is designed for or primarily intended for use with controlled substances. *See Posters 'N' Things*, 511 U.S. at 518-19; *Hoffman Estates*, 455 U.S. at 501.

With respect to the grinders and scales, I conclude that there is a genuine dispute of material fact as to whether these items are drug paraphernalia. As an initial matter, these items are not per se drug paraphernalia under 21 U.S.C. § 863(d). While Special Agents Kirkpatrick and Hartz stated in their declarations that the grinders are designed for and primarily used for grinding marijuana (Doc. 36 Ex. 3 at 11; Doc. 36 Ex. 4 at 8), Little's affidavit, on the other hand, states that the grinders could be used for grinding dried herbs for cooking and for healing purposes as well as for grinding tobacco (Doc. 39 Ex. 3 at 2). Regarding the scales, Special Agents Kirkpatrick and Hartz never stated that the scales were primarily intended or designed for use with controlled substances; both merely stated that the scales are of a type commonly used to weigh controlled substances. (Doc. 36 Ex. 3 at 11-12; Doc. 36 Ex. 4 at 8-9.) Little, for his part, stated in his affidavit that the scales could be used for weighing jewelry, gunpowder for reloading, medicine, and spices. (Doc. 39 Ex. 3 at 2.)

As noted, 21 U.S.C. § 863(e) allows certain factors to be considered in determining whether an item constitutes drug paraphernalia, including "the existence and scope of legitimate uses of the item in the community" and "the manner in which the item is displayed for sale," among others. I may not weigh conflicting affidavits to determine facts in lieu of a trial. *Hanley v. Chrysler Motors Corp.*, 433 F.2d 708, 711 (10th Cir. 1970); *Warrior Tombigbee Transp. Co., v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983) (quotation omitted). Sergeant Taylor's statement in his declaration regarding the display of the grinders and scales might have, if it had provided more detail, served as uncontroverted evidence that the grinders and scales are drug paraphernalia. *See Posters 'N' Things*, 511 U.S. at 522 n.11; *see also Cortez III Serv. Corp. v. Nat'l Aeronautics & Space Admin.*, 921 F. Supp. 8, 11 (D.D.C. 1996) ("Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary

12

judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence."). However, Sergeant Taylor's declaration did not specifically describe how the grinders and scales were displayed. Nor did the United States provide any photographs of how the grinders and scales were displayed in the store. Therefore, it is left to the fact finder to determine, in the context of 21 U.S.C. § 863(e), whether the grinders and scales constitute drug paraphernalia.

## CONCLUSION

I conclude that the Defendant Property, with the exception of the scales and grinders, constitutes drug paraphernalia as defined by 21 U.S.C. § 863(d). I therefore grant summary judgment in favor of the United States with respect to the drug paraphernalia, and the drug paraphernalia is hereby forfeited pursuant to 21 U.S.C. § 881(a)(10), with all right, title, and interest, including that claimed by Little, vested in the United States. I furthermore deny summary judgment and decline to enter an order of forfeiture with respect to the scales and grinders that are part of the Defendant Property.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge